Dear Chief Lentini:
In response to your letter of February 12, 1981, I enclose herewith a copy of a previous Attorney General Opinion No. 75-1309, that answered the same or similar questions you had regarding the authority for arrest of defendants/principals by their bondsmen/sureties.
Your remaining unanswered questions, as I understand them, are as follows:
1. If the surety does not bock his principal at the nearest jail (as required under previous Attorney General Opinion No. 75-1309), may the surety be arrested for kidnapping?
2. Can a bondsman arrest a subject in Louisiana for a bond posted in another state? If so, is extradition necessary?
3. Does a bondsman have a right to bear arms to effect an arrest?
4. What force is allowed to effect the arrest?
Since bondsmen have the statutory authority to arrest their principals for the purpose of surrender (Art. 340 La.C.Cr.P. and Attorney General Opinion No. 75-1309), a corresponding duty to make a proper surrender after arrest exists. Article 338 of the Louisiana Code of Criminal Procedure provides in pertinent part "a surety may surrender the defendant . . ., to the officer charged with his detention, . . ." (Emphasis added). The official comments following this article states that "the official to whom the surrender must be made is the officer to whose custody the defendant was or would have been committed." However, from a reading of Articles 228 and 207 of LSA-C.Cr.P. "peace officers" have a duty to book the person arrested at the nearest jail or police station.
In view of Attorney General Opinion No. 75-1309, a resolution of the above apparent conflict has been to impliedly define the phrase "office charged with his detention" as the officer who would have received the arrestee for regular booking after arrest by a peace officer. This should not be construed as including bondsmen within the definition of peace officers.
By analogy to the situation of a peace officer failing to book his prisoner promptly at the nearest jail, one can arguably determine the penalties for such conduct on the part of bondsmen. The official comments to LSA-C.Cr.P. Article 228 indicates that a violation of the booking procedures by peace officers would constitute malfeasance in office under La. R.S. 14:134. However, since bondsmen are not "peace officers or public officials" per se, they could not be charged with malfeasance. They may however be subject to contempt proceedings or obstruction of court orders, depending upon the circumstances and seriousness o the misconduct complained of for failing to properly surrender their principals Rf: La. Const. of 1974 Art. V. Section 2; LSA-C.Cr.P. Art. 17, 20 to 25 and R.S. 14:133.1 as amended.
Accordingly, given the surety's statutory power to arrest his principal for surrender purposes, an impropriety in the booking or surrender procedure would not constitute kidnapping. This conclusion is reached based upon the aforementioned analogy and upon the assumption that there is a surrender of some type. The situation of no surrender at all could, for sake of argument, cause one to consider such a flagrant violation as either kidnapping or false imprisonment, dependant upon the circumstances of each case.
Relative to out of state bondsmen's power to arrest a fugitive in Louisiana, kindly refer to LSA-C.Cr.P. Articles 340,214, 219, 265, 266 and 270.
A reading of Article 340 of the C.Cr.P. indicates that for purposes of surrending him, the surety may arrest him. This has been interpreted to mean that the principal may be arrested by his own surety for jumping bail. See Attorney General Opinion No. 75-1309. Note here also that Article 214 of the C.Cr.P. allows for arrest of a felon by a private person and Article 219 provides for arrest by a private person while assisting a peace officer. While not specifically granting any general power of arrest upon out of state bondsmen, these articles would indicate limited powers of arrest in specified situations.
But these articles should also be read in conjunction with LSA-C.Cr.P. Articles 265, 266 and 270 that further limit the powers of arrest in extradition cases. Articles 265 directs "peace officers" to execute the governor's warrant of arrest against a fugitive for extradition purposes. Article 266 authorizes any peace officer to arrest the accused in the state with the aid of other peace officers or persons in the execution of the governor's warrant (Emphasis added) Article 269 empowers a judge with criminal jurisdiction to issue a fugitive arrest warrant "when on the oath or affidavit of a credible person, . . . the person to be arrested is charged with: (1.) Being a fugitive from justice of another state; (2.) Commission of a crime in another state; or (3.) Having been convicted . . . in another state, and having escaped from confinement or having broken the terms of his bail . . ." (Emphasis added).
Accordingly, while out of state bondsmen may under limited circumstances arrest their principals, our code would require compliance with extradition articles noted above in the same manner as done by peace officers. The preferred method suggested by these codal articles would be for the bondsmen to request the assistance of a peace officer in getting warrants of arrest issued. However, assuming an NCIC wanted bulletin has been placed for a fugitive's arrest, the fugitive may be arrested by his surety/bondsman for breaking the terms of his bail undertaking. Rf: LSA-C.Cr.P. Articles 340 and 269(3). Immediately after such an arrest, the bondsman should turn his principle over t the local jail/court for extradition proceedings.
It is also our opinion that while it is the constitutionally protected right of each citizen to keep and bear arms, there is no authority that would allow bondsmen in Louisiana to carry weapons concealed on their person. LSA — Constitution 1974 Article I, Section 11, R.S. 14:95 and 14:95.1. A bondsman going through the proper channels, who becomes specially commissioned by the Department of Public Safety or comparable law enforcement agency with such powers, may be authorized to carry concealed weapons for limited specified purposes. And then even when authorized to carry weapons, a bondsman could only use his weapon to make an arrest of his principal when he has sufficient reason to believe his life or others are seriously threatened and in jeopardy at the time, and the use of deadly force is needed to counter deadly force.
We refer you to LSA-C.Cr.P. Articles 220, 224, 226, and 227
in answering what force is allowed the bondsman to effect an arrest of his principal.
Article 220 of the Louisiana Code of Criminal Procedure provides:
. . . the person making lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistence of the person being arrested or detained.
Article 224 of the C.Cr.P. allows ". . . a peace officer, . . ." to make forcible entry into "any . . . structure . . ." in making an arrest.
Article 226 of the C.Cr.P. and the official comments thereunder, places a duty upon private persons making arrests to turn their prisoner and his effects over to a peace officer.
Article 227 of the C.Cr.P. provides for rearrest after the prisoner escapes by authorizing pursuit and rearrest at any time and in any place within the state.
Accordingly, a bondsman as a private person may use reasonable force in arresting his principal but may not make forcible entry into any dwelling, vehicle or other structure without the assistance of a peace officer.
We trust that your questions have been sufficiently answered by this opinion. Should you need further assistance, please feel free to contact this office.
Sincerely,
 William J. Guste, Jr. Attorney General
 BY: Ivan L. R. Lemelle Assistant Attorney General La.Atty. Gen. Op. No. 81-253, 1981 WL 155308
(La.A.G.)